# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

HECTOR TELLEZ,           §
TDCJ # 1858884,          §
    Petitioner,          §
                        §
                        §          EP-17-CV-126-KC
                        §
LORIE DAVIS,             §
Director, Texas Department of §
Criminal Justice, Correctional §
Institutions Division,   §
    Respondent.          §

## MEMORANDUM OPINION AND ORDER

Petitioner Hector Tellez challenges Respondent Lorie Davis's custody over him through a *pro se* "Petition for a Writ of Habeas Corpus by a Person in State Custody" under 28 U.S.C. § 2254 (ECF No. 3).[1] He explains a jury found him guilty of intoxication manslaughter and aggravated assault. He asserts an entitlement to federal habeas relief because, he claims, his counsel provided ineffective assistance; the investigating officers took his blood without his consent and without a warrant; the appellate courts violated his due process rights; and the State, without the blood specimen, lacked sufficient evidence to prove his guilt beyond a reasonable doubt.[2]

Respondent Lorie Davis answers "because [the] claims presented are unexhausted and procedurally barred, meritless, or fail to overcome [Antiterrorism and Effective Death Penalty Act]'s deferential standard of review,"[3] the Court must deny Tellez the writ.

---

[1] "ECF No." refers to the Electronic Case Filing number for documents docketed in this case. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

[2] Pet'r's Pet. at 6–7, ECF No. 3.

[3] Resp't's Answer at 1, ECF No. 11.

After reviewing the record and for the reasons discussed below, the Court finds that Tellez is not entitled to federal habeas relief and the Court will accordingly deny his petition. The Court will additionally deny Tellez a certificate of appealability.

## BACKGROUND AND PROCEDURAL HISTORY

Davis has custody of Tellez pursuant to sentences imposed by the 384th Judicial District Court of El Paso County, Texas.[4] A jury found Tellez guilty on two counts of intoxication manslaughter and one count of aggravated assault, and assessed punishment at forty years' imprisonment.

The charges against Tellez arose from a three-vehicle accident on July 8, 2011.[5] Late that evening, seventeen-year-old Mark Dobbs stalled his Nissan Sentra on the outside shoulder of Loop 375 in El Paso, Texas. He called his friend, Jon Cervoni, for help. Cervoni arrived about ten minutes later with Aaron Carrillo. Cervoni pulled his car in front of Dobbs' Sentra and unsuccessfully attempted to start it with jumper cables. Cervoni then got into Dobbs' car to call for more assistance while Carrillo stood outside on the passenger side of the car. Dobbs later remembered the three were talking, and then he woke up in a hospital. His father told him Cervoni and Carrillo were dead.

Evadne Atkinson, a registered nurse, was driving home on Loop 375 sometime after 11 p.m. that evening. She watched as a truck ahead of her traveling on the shoulder of the road suddenly become airborne and flipped over. She did not recall seeing the truck's brake lights illuminate. Atkinson stopped, got out of her car, and observed a man she later identified as

---

[4] Clerk's R. at 149–154 (Judgments in Cause No. 20120D04773, 384th Dist. Ct., El Paso Cnty., Tex.), ECF No. 12-5.

[5] *See Tellez v. State*, No. 08-13-00141-CR, 2015 WL 5449728 (Tex. App.—El Paso 2015, pet. ref'd) (providing a more detailed factual summary).

Tellez coming from the direction of the truck. Atkinson asked Tellez if he was okay, and he replied he could not find his cell phone. She watched as Tellez staggered and wandered into the roadway. Based on her experience as a nurse, Atkinson concluded that Tellez was intoxicated.

El Paso Police Officer Daniel Conway arrived at the accident scene. He noted Tellez had a strong odor of alcoholic beverages on his breath and his speech was slurred. He listened as Tellez volunteered that he was on his cell phone at the time of the accident. Conway placed Tellez under arrest for intoxication assault.

El Paso Police Officer Adrian Armendariz, assigned to the Special Traffic Investigations Unit, was called out to investigate. His investigation showed that Tellez's Toyota Tundra struck the rear of the Sentra with such force that it pushed the trunk into the front passenger area of the vehicle and the right rear tire ended up immediately behind the front passenger seat. Armendariz found no evidence that Tellez applied his brakes. Armendariz discovered an open 30–pack of Budweiser beer next to the truck. Several of the cans were open and empty. A witness at the scene noted the inside of the truck smelled like alcohol.

An ambulance transported Tellez to the Beaumont Army Medical Center on Fort Bliss for medical care.

Officer Raul Lom went to the hospital and administered *Miranda* warnings to Tellez. He also read the statutory warnings from a form, known as the DIC–24, and asked Tellez for a sample of his blood. Tellez did not respond and give his consent. At Lom's request and without a warrant, a nurse drew a specimen of Tellez's blood using a kit provided by Lom. Analysis showed Tellez's blood alcohol level was .29 g/dL.[6]

---

[6] *Id.* at *1–2.

A grand jury returned a five count indictment charging Tellez with intoxication manslaughter ("counts one and three"), manslaughter ("counts two and four"), and aggravated assault ("count five").[7] Tellez pleaded not guilty and proceeded to trial.

Tellez's retained counsel did not call Tellez to testify at the guilt/innocence phase of his trial.[8] He argued to the jury that the State failed to prove each element of the charges beyond a reasonable doubt.[9]

The jury found Tellez guilty on two counts of intoxication manslaughter ("counts one and three") and one count of aggravated assault ("count five").[10] The Court dismissed the remaining counts,[11] and sentenced Tellez to consecutive terms of twenty years' imprisonment on the convictions for intoxication manslaughter, and a concurrent term of fifteen years' imprisonment on the conviction for aggravated assault.[12]

Tellez, through his appointed counsel, filed a motion for a new trial.[13] The motion was denied by operation of law.

Tellez timely appealed.[14] During the appeal, Tellez "expressed dissatisfaction" with his appellate counsel after he waived oral argument, and the appellate court appointed new counsel.[15]

---

[7] Clerk's R. at 10–14 (Re-Indictment), ECF No. 12-5.

[8] Clerk's R. at 34 (Entry of Appearance), ECF No. 12-5.

[9] Trial Tr., vol. 4, at 91–102, ECF No. 12-9.

[10] Trial Tr., vol. 4, at 117, ECF No. 12-9.

[11] *See* Clerk's R. at 170 (Order Dismissing Counts II and IV), ECF No. 12-5 (dismissing the charges that, in an alternative to intoxication manslaughter, alleged Tellez caused the accident by using a cell phone while driving or driving on the shoulder after consuming alcohol).

[12] Clerk's R. at 149–154 (Judgments in Cause No. 20120D04773, 384th Dist. Ct., El Paso Cnty., Tex.), ECF No. 12-5.

[13] Clerk's R. at 174–75 (Mot. for New Tr.), ECF No. 12-5.

[14] Clerk's R. at 172–73 (Notice of Appeal), ECF No. 12-5.

In his first issue on appeal, Tellez asserted his trial counsel provided constitutionally ineffective assistance.[16]  Specifically, he claimed his attorney failed to:

> (1) exclude evidence related to an unconstitutional blood draw; (2) exclude evidence from his privileged hospital-treatment records; (3) request an interpreter for him during the guilt/innocence phase of trial; (4) object to alleged misstatements of law by the prosecutors; (5) request the trial court to take judicial notice of Sections 545.303 and 545.058 of the Texas Transportation Code; and (6) request the trial court to instruct the jury during the punishment phase that [his] sentences could be served consecutively or concurrently.[17]

In his second issue, Tellez argued "his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment because the jury was not informed that the trial court could order the sentences to run consecutively or concurrently."[18]  In his third issue, Tellez maintained "he suffered egregious harm from the absence of an instruction in the punishment charge informing the jury that the trial court could order the sentences to run concurrently or consecutively."[19]  In his final issue, Tellez argued "the trial court erred by allowing his conviction to be based on 'false testimony.'"[20]  He explained "the jury 'was substantially misled by the cumulative effect of the repeated misstatements of law.'"[21]  The Eighth Court of Appeals overruled each issue and affirmed the convictions and sentences.[22]  The Court of Criminal Appeals denied Tellez's petition for discretionary relief.[23]

---

[15] Appellant's Br. at 17, ECF No. 12-28.

[16] *Tellez*, 2015 WL 5449728, at *1–2.

[17] *Id*. at *2.

[18] *Id*. at *8.

[19] *Id*.

[20] *Id*.

[21] *Id*.

[22] *Id*. at *9.

[23] Action Taken, *Tellez v. State*, PD-1342-15, Tex. Crim. App., ECF No. 12-37.

Tellez sought a state writ of habeas corpus.[24] He asserted he was denied the effective assistance of trial counsel, because counsel failed to move to suppress the blood alcohol concentration ("BAC") evidence.[25] Tellez further alleged he was subjected to prosecutorial misconduct because the prosecutor knew or should have known the BAC evidence was illegally obtained.[26] The Texas Court of Criminal Appeals denied the writ without written order on February 15, 2017.[27]

In his federal habeas petition, Tellez maintains he was denied the effective assistance of counsel.[28] Tellez further alleges his Fourth Amendment rights were violated, that he was denied due process of law, and that there was insufficient evidence to establish his guilt beyond a reasonable doubt.[29] Davis allows the petition is timely and not successive. Davis contends some of Tellez's claims are unexhausted and procedurally barred.[30] She asserts others lack merit or fail to overcome the deferential standard of review.

## APPLICABLE LAW

### A. 28 U.S.C. § 2254

"[C]ollateral review is different from direct review," and the writ of habeas corpus is "an extraordinary remedy," reserved for those petitioners whom "society has grievously wronged."[31]

---

[24] State Writ Application, *Ex parte Tellez*, WR-86,171-01, Tex. Crim. App., at 53-106, ECF No. 12-33.

[25] *Id*. at 58–60, ECF No. 12-33.

[26] *Id*. at 58–59, ECF No. 12-33.

[27] Action Taken, *Ex parte Tellez*, WR-86,171-01, Tex. Crim. App., ECF No. 12-36.

[28] Pet'r's Pet. at 6, ECF No. 3.

[29] *Id.* at 6–7.

[30] Resp't's Answer at 6, ECF No. 11.

[31] *Brecht v. Abrahamson*, 507 U.S. 619, 633–34 (1993).

It "is designed to guard against extreme malfunctions in the state criminal justice system."[32] It provides an important, but limited, examination of an inmate's conviction and sentence.[33] Accordingly, the federal habeas courts' role in reviewing state prisoner petitions is exceedingly narrow. "Indeed, federal courts do not sit as courts of appeal and error for state court convictions."[34] They must generally defer to state court decisions on the merits,[35] and on procedural grounds.[36] They may not grant relief to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present.[37]

A federal court can only grant relief if "the state court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law,'"[38] or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[39] The focus of this well-developed standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."[40] Moreover, the federal court's focus is on the state court's ultimate legal conclusion, not whether the state

---

[32] *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)).

[33] *See Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("[S]tate courts are the principal forum for asserting constitutional challenges to state convictions.").

[34] *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

[35] *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

[36] *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991); *Muniz v. Johnson*, 132 F.3d 214, 220 (5th Cir. 1998).

[37] *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

[38] *Berghuis v. Thompkins*, 560 U.S. 370, 378 (2010) (quoting 28 U.S.C. § 2254(d)(1)).

[39] 28 U.S.C. § 2254(d)(2) (2012).

[40] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

court considered and discussed every angle of the evidence.[41]  Indeed, state courts are presumed

to "know and follow the law."[42]  Factual findings, including credibility choices, are entitled to

the statutory presumption, so long as they are not unreasonable "in light of the evidence

presented in the State court proceeding."[43]  Further, factual determinations made by a state court

enjoy a presumption of correctness which the petitioner can rebut only by clear and convincing

evidence.[44]  The presumption of correctness applies not only to express findings of fact, but also

to "unarticulated findings which are necessary to the state court's conclusions of mixed law and

fact."[45]  In sum, the federal writ serves as a "'guard against extreme malfunctions in the state

criminal justice systems,' not a substitute for ordinary error correction through appeal."[46]  "If this

standard is difficult to meet, that is because it was meant to be."[47]

## B.      Ineffective Assistance of Counsel

Ineffective-assistance-of-counsel claims are analyzed under the well-settled standard set

forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient.  This
> requires showing that counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient performance prejudiced the
> defense.  This requires showing that counsel's errors were so serious as to deprive

---

[41] *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *see also Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) ("we review only the state court's decision, not its reasoning or written opinion").

[42] *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

[43] 28 U.S.C. § 2254(d)(2).

[44] *Id.* § 2254(e)(1); *see Clark v. Quarterman*, 457 F.3d 441, 444 (5th Cir. 2006) (noting that a state court's determination under § 2254(d)(2) is a question of fact).

[45] *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

[46] *Harrington*, 562 U.S. at 102–03 (quoting *Jackson*, 443 U.S. at 332, n.5).

[47] *Id.* at 102.

the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.[48]

A habeas petitioner has the burden of proving both prongs of the *Strickland* test.[49]

When deciding whether counsel's performance was deficient, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."[50] Federal habeas courts presume that counsel's choice of trial strategy is objectively reasonable unless clearly proven otherwise.[51] Counsel's strategic choices, made after a thorough investigation of the law and facts relevant to plausible options, are virtually unchallengeable.[52] Counsel's performance cannot be considered deficient or prejudicial if counsel fails to raise a non-meritorious argument.[53]

Moreover, the Court must review a state petitioner's ineffective-assistance-of-counsel claim "through the deferential lens of § 2254(d),"[54] and consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable—a

---

[48] *Strickland*, 466 U.S. at 687.

[49] *Rogers v. Quarterman*, 555 F.3d 483, 489 (5th Cir. 2009); *Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008).

[50] *Strickland*, 466 at 688–89.

[51] *Id.* at 689.

[52] *Id.* at 673; *Pape v. Thaler*, 645 F.3d 281, 289–90 (5th Cir. 2011).

[53] *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007); *Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006).

[54] *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

substantially higher threshold."[55]  Thus, in light of the deference accorded by § 2254(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."[56]

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.[57]

With these principles in mind, the Court will proceed to analyze Tellez's claims.

## ANALYSIS

### A.      Ineffective assistance of counsel

#### 1.      *Missouri v. McNeely* claim

Tellez relies on *Missouri v. McNeely*, 569 U.S. 141, 152 (2013), to argue his trial counsel was ineffective because he did not move to suppress evidence of Tellez's BAC.[58]  He further alleges his appellate counsel was ineffective because he raised this issue in his direct appeal, rather than preserving the issue for further development in his state habeas action.[59]

Tellez's appellate counsel did raise a *McNeely*-based ineffective-assistance-of-trial-counsel claim in his appeal.  Because the Eighth Court of Appeals issued "the last reasoned opinion" on this issue, the Court will review the intermediate appellate court's decision to

---

[55] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

[56] *Harrington*, 562 U.S. at 101.

[57] *Id.* at 105.

[58] Brief in Supp. of Pet'r's Pet. at 26–27, ECF No. 3-1.

[59] *Id.* at 29–31.

determine whether the denial of this claim was contrary to or an unreasonable application of federal law.[60]  The appellate court concluded:

> *McNeely* was decided on April 17, 2013.  The trial of this case began two days later, on April 19, 2013, and the blood test evidence was admitted on April 23, 2013.  Obviously, no Texas appellate court had addressed the impact of *Missouri v. McNeely* on Texas' mandatory blood draw statute at the time this case was tried.  On January 13, 2014, the U.S. Supreme Court vacated the San Antonio Court of Appeals' decision in *Aviles v. State*, [] and remanded the case for reconsideration in light of McNeely.  *Aviles v. Texas*, —— U.S. ——, 134 S. Ct. 902, 187 L.Ed.2d 767 (2014).  Ten days later, the Thirteenth Court of Appeals was the first Texas intermediate appellate court to apply *McNeely* when it decided *State v. Villarreal* on January 23, 2014.  *See State v. Villarreal*, No. 13–13–00253–CR, 2014 WL 1257150, at *11 (Tex. App.–Corpus Christi Jan. 23, 2014, pet. granted) . . .
>
> Counsel's performance must, however, be measured against the state of the law in effect during the time of trial.  *Ex parte Chandler*, 182 S.W.3d 350, 359 (Tex. Crim. App. 2005).  At the time this case was tried, it was accepted law in Texas that blood drawn in compliance with the Section 724.012(b) of the Transportation Code was a valid search.  *See Beeman v. State*, 86 S.W.3d 613, 615 (Tex. Crim. App. 2002).  While *Missouri v. NcNeely* was decided two days before trial on the merits began, its impact on Texas law was decidedly unsettled when this case was tried.  Furthermore, the record does not reflect counsel's reasoning for not moving to suppress the blood test results and we do not find that counsel's failure to seek suppression based on *McNeely* was so outrageous that no competent attorney would have made the same decision.  Under these circumstances, we conclude that Appellant has failed to show that his counsel's performance was deficient.  *See Bernal v. State*, No. 02–13–00381–CR, 2014 WL 5089182 at *4–5 (Tex. App.─Fort Worth Oct. 9, 2014, no pet.) (concluding that appellant failed to show ineffective assistance of counsel related to allegation that counsel did not move to suppress evidence under *Missouri v. McNeely* where the law was unsettled at the time of appellant's trial and counsel was not given an opportunity to explain his reasoning).[61]

The appellate court determined the effect of *McNeely* on Texas's blood-draw and implied-consent statutes was unsettled at the time of Tellez's trial and, accordingly, that Tellez's trial counsel's failure to file a motion to suppress based on *McNeely* was not unreasonable.  The

---

[60] *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

[61] *Tellez*, 2015 WL 5449728, at *3–4.

appellate court's conclusion was not an unreasonable application of *Strickland*. Counsel's performance cannot be considered deficient or prejudicial if counsel fails to raise a non-meritorious argument, or an objection likely to be overruled.[62] And the reasonableness of counsel's challenged conduct is determined by viewing the circumstances at the time of that conduct.[63] As noted by the appellate court, at the time of Tellez's trial there was no legal precedent for the argument that the taking of the blood sample pursuant to the relevant Texas statutes violated Tellez's Fourth Amendment rights. Therefore, the appellate court's determination that counsel's performance was not deficient for failing to raise this issue was not an unreasonable application of *Strickland*.

Furthermore, because there was other evidence of Tellez's intoxication—including the testimony of Atkinson, Conway, Armendariz, and Lom, and the open and empty beer cans found next to his vehicle—Tellez cannot establish that he was prejudiced by the failure to suppress the BAC evidence of intoxication.[64]

### 2. Ineffective assistance of appellate counsel

Tellez also asserts his appellate counsel was ineffective because he raised an ineffective-assistance-of-trial-counsel claim in Tellez's appeal, rather than preserving the claim for further development in a state action for habeas corpus. The record shows Tellez did not properly exhaust this claim in the state courts by fairly presenting the same legal and factual basis for this claim to the Texas Court of Criminal Appeals in his state habeas action.

---

[62] *Rhoades*, 852 F.3d at 433; *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997).

[63] *Strickland*, 466 U.S. at 690–91.

[64] *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (noting the weight of the evidence of guilt in finding alleged deficient performance of counsel not prejudicial); *Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008) (same).

Federal courts generally lack the power to grant habeas corpus relief on an unexhausted claim.[65]  "[A]bsent special circumstances, a federal habeas petitioner must exhaust his state remedies by pressing his claims in state court before he may seek federal habeas relief."[66]

To exhaust his state remedies, a habeas petitioner must present his claims to the state's highest court in a procedurally correct manner.[67]  In Texas, the highest state court with jurisdiction to review the validity of a state criminal conviction is the Texas Court of Criminal Appeals.[68]  Once a federal claim has been fairly presented to the Texas Court of Criminal Appeals, either in a direct appeal or collateral proceeding, the exhaustion requirement is satisfied.[69]

To properly exhaust a claim, the petitioner must "present the state courts with the same claim he urges upon the federal courts."[70]  Claims are not exhausted "if a petitioner presents new legal theories or entirely new factual claims in his petition to the federal court."[71]

The Texas abuse of the writ doctrine precludes a state court from hearing a new habeas claim once a state court has denied a habeas application.[72]  If a federal habeas petitioner has not

---

[65] *Kunkle v. Dretke*, 352 F.3d 980, 988 (5th Cir. 2003).

[66] *Orman v. Cain*, 228 F.3d 616, 619-20 (5th Cir. 2000) (citing 28 U.S.C. § 2254(b)(1)).

[67] *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Moore v. Cain*, 298 F.3d 361, 364 (5th Cir. 2002).

[68] *Tigner v. Cockrell*, 264 F.3d 521, 526 (5th Cir. 2001).

[69] *Bautista v. McCotter*, 793 F.2d 109, 110–11 (5th Cir. 1986).

[70] *Picard v. O'Connor*, 404 U.S. 270, 276 (1971).

[71] *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

[72] *Fuller v. Johnson*, 158 F.3d 903, 906 (5th Cir. 1998).

properly exhaust all his available state remedies—and the state courts would find his claims are procedurally barred—the claims are deemed unexhausted but procedurally defaulted.[73]

Federal habeas relief on a procedurally defaulted claim is barred unless the petitioner can show cause for the default and actual prejudice arising from the default, or demonstrate the failure to consider the claims will result in a fundamental miscarriage of justice.[74]  To establish cause, a petitioner must show some external force impeded his efforts to comply with the state's procedural rule regarding proper presentment of the claims in the state courts.[75]  To demonstrate prejudice, a petitioner must show the error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."[76]  To establish a fundamental miscarriage of justice, a petitioner must make a "persuasive showing" he is actually innocent of the crime of conviction.  In other words, he must show that as a factual matter, he did not commit the crime for which he was convicted.[77]

Tellez may not return to the state courts to present his unexhausted federal habeas claims. Texas' abuse of the writ doctrine—which would preclude a state court from hearing his claims because a state court has previously denied his habeas petition—would procedurally bar his claims.[78]  Moreover, Tellez has not established that some external force impeded any effort to properly present his ineffective-assistance-of-appellate-counsel claim to the Court of Criminal Appeals in his application for a state writ of habeas corpus.  Nor has Tellez established that

---

[73] *O'Sullivan*, 526 U.S. at 848; *Bledsue v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999).

[74] *Coleman*, 501 U.S. at 750.

[75] *Id.* at 753.

[76] *Smith v. Quarterman*, 515 F.3d 392, 403 (5th Cir. 2008) (internal quotations omitted).

[77] *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001).

[78] *Fuller*, 158 F.3d at 906.

appellate counsel's alleged error infected his entire criminal proceedings with error of constitutional dimension. Finally, Tellez cannot make a persuasive showing he is factually innocent of the crime for which he was convicted because he alleges his legal innocence, rather than his factual innocence. Although Tellez asserts that the signs of intoxication he displayed at the time of the accident could have been caused by a concussion—and that absent the BAC evidence the jury would have found him not guilty—the fact remains that Tellez's BAC was .29 g/dL when tested after the collision. Therefore, the record clearly establishes his factual guilt.

Because Tellez's ineffective-assistance-of-appellate-counsel claim was not properly exhausted in the state courts—and he has not established cause for or prejudice arising from the default of this claim—it is procedurally defaulted and the Court may not grant relief on this claim.

### 3. Interpreter

Tellez asserts his trial counsel was ineffective for failing to obtain an interpreter for the guilt/innocence phase of his trial.[79]

Tellez raised this claim in his direct appeal. The appellate court denied relief, noting there was evidence in the record Tellez "understood English," but needed an interpreter during the punishment phase to translate his own testimony from Spanish to English.[80] The appellate court found that, to be entitled to an interpreter pursuant to state law, a defendant must show he does not have a sufficient command of English to comprehend the testimony of witnesses.[81] The

---

[79] Brief in Support of Pet'r's Pet. at 25–26, ECF No. 3-1.

[80] *Tellez*, 2015 WL 5449728, at *6.

[81] The appellate court determined:

Under the Sixth Amendment, an accused has the right to be present at his trial and confront the witnesses brought against him. U.S. Const. amend. VI. Encompassed within these rights is the right to understand the

appellate court further determined Tellez understood the testimony of the witnesses without interpretation, and that the record did not support Tellez's claim "that he does not understand English nor does it show that the trial court would have abused its discretion by denying a request for appointment of an interpreter during the guilt-innocence portion of trial."[82] Accordingly, the appellate court held Tellez's trial counsel's performance was not deficient because he failed to seek appointment of an interpreter for the guilt-innocence phase of trial.[83]

Tellez has not rebutted the state court's finding of fact—that Tellez understood spoken English sufficiently that he understood the witnesses' testimony without an interpreter—with clear and convincing evidence. The appellate court's determination that Tellez understood spoken English is bolstered by the record, which included the State's witnesses' testimony that Tellez spoke to them in English immediately after the accident.

Additionally, the Court must afford deference to the state court's finding that, as a matter of state law, counsel's performance was not deficient because a motion for an interpreter could properly be denied.[84]

Because Tellez has failed to establish counsel's alleged failure to obtain an interpreter during the guilt/innocence phase of the proceedings constituted deficient performance, the state

---

testimony of the witnesses. *See Garcia v. State*, 149 S.W.3d 135, 140-41 (Tex. Crim. App. 2004). Consequently, if an accused does not understand English, he must be provided with an interpreter. *Garcia*, 149 S.W.3d at 140-41. This constitutional requirement is codified in Article 38.30. *See* Tex. Code Crim. Proc. Ann. art. 38.30 (West Supp. 2014). The . . . judge has an independent duty to implement this right in the absence of a knowing and voluntary waiver by the defendant.
*Tellez*, 2015 WL 5449728, at *5.

[82] *Id.*

[83] *Id.*

[84] *Charles v. Thaler*, 629 F.3d 494, 500–01 (5th Cir. 2011); *Emery*, 139 F.3d at 198.

court's denial of this claim was not an unreasonable application of *Strickland* and he is not

entitled to habeas relief on this claim of ineffective assistance of counsel.[85]

### 4. Conclusory claims

In his "Brief in Support of Writ of Habeas Corpus," under the heading of ineffective

assistance of counsel, Tellez lists the following three claims: "(a) INTERPRETER"; "(b)

FAILURE TO OBJECT AT TRIAL" (the *McNeely* claim); and "(c) MOTION FOR NEW

TRIAL AND APPEAL."[86]  In the "Statement of Facts" portion of this brief, Tellez makes the

conclusory assertion that trial counsel rendered ineffective assistance by failing to obtain a

medical expert to testify regarding the effects of a concussion; failing to obtain and introduce cell

phone records that disputed the State's theory that cell phone use caused the accident; and failed

to obtain a traffic reconstruction expert to refute the State's theory of the accident and present an

alternate theory.[87]

"Mere conclusory allegations in support of a claim of ineffective assistance of counsel

are insufficient to raise a constitutional issue."[88]  Claims that trial counsel erred by not calling

witnesses are not favored because the presentation of testimonial evidence is a matter of trial

strategy and because allegations of what a witness would have testified are largely speculative.[89]

Furthermore, Tellez was acquitted on the charges that his use of a cellphone contributed to the

---

[85] Because a *Strickland* claim fails if the petitioner cannot establish *either* deficient performance or prejudice, the Court need not evaluate both prongs of the test if the petitioner makes an insufficient showing as to either performance or prejudice.  *Strickland*, 466 U.S. at 697; *Blanton*, 543 F.3d at 235-36.

[86] Brief in Support of Pet'r's Pet. at 25–26, 26–28, 28–32, ECF No. 3-1.

[87] *Id.* at 11.

[88] *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998).

[89] *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

fatal accident and, accordingly, he cannot show prejudice arising from the alleged failure of counsel to obtain his cell phone records.

In the "Statement of Facts" portion of his brief, Tellez makes the conclusory assertion that trial counsel was ineffective for failing to object to the trial court's intervention in jury selection, and failing to object to the admission of the testimony that the victims were members of a Christian rock band.[90] He also makes several other ineffective assistance claims. These include allegations that counsel did not properly cross-examine the State's witnesses, did not object to the introduction of excludable evidence, and did not object to "repeated misstatement[s] of law."[91] These claims are unsupported by any argument or further factual development and are too conclusory to warrant habeas relief. Tellez does not argue or show that any of these actions constituted deficient performance and he fails to establish prejudice arising from any of the alleged errors. Furthermore, given the weight of the evidence against Tellez, he has not established that any of these alleged errors were prejudicial.[92]

## B. Illegal search and seizure

Tellez contends the warrantless blood draw, pursuant to Texas Transportation Code § 724.012(b), violated his right to be free of an unreasonable search and seizure.[93] A habeas petitioner asserting a Fourth Amendment claim is not eligible for relief if they had a full and fair opportunity to litigate the claim in the state courts.[94] Because Tellez had the opportunity to

---

[90] Brief in Support of Pet'r's Pet. at 11–12, ECF No. 3-1.

[91] *Id.* at 10.

[92] *Berghuis*, 560 U.S. at 390; *Pondexter*, 537 F.3d at 525.

[93] Brief in Support of Pet'r's Pet. at 19–20, ECF No. 3-1.

[94] *Stone v. Powell*, 428 U.S. 465, 494–95 (1976); *Billiot v. Maggio*, 694 F.2d 98, 100 (5th Cir. 1982).

litigate his Fourth Amendment claims in the state courts, he is not entitled to federal habeas relief on this claim.

### C.      Due process

Tellez alleges the state courts violated his right to due process of law.  He argues the "Texas appellate court procedures do not allow for the expansion of the record for ineffective assistance of counsel claims on direct appeal."[95]  Tellez further asserts the Texas Court of Criminal Appeals' rule prohibiting consideration of a state habeas claim raised and denied on appeal violates due process.[96]

It is "axiomatic that infirmities in state habeas proceedings do not constitute grounds for federal habeas relief."[97]  Because this claim is not cognizable in a federal habeas action, relief on this claim must be denied.

### D.      Actual innocence/insufficiency of the evidence

Tellez asserts, under the heading "actual innocence," that there was insufficient evidence to prove his guilt beyond a reasonable doubt, "absent the illegally obtained blood evidence."[98]  Tellez initially raised but then forfeited this claim in his appeal.[99]  Regardless of his procedural default of the claim, it lacks merit.

To the extent Tellez asserts a free-standing claim of "actual innocence," such a claim is not cognizable in a section 2254 action.  The Supreme Court held in *Herrera v. Collins* that

---

[95] Pet'r's Pet. at 14, ECF No. 3; Brief in Support of Pet'r's Pet. at 12–13, ECF No. 3-1.

[96] Pet'r's Pet at 14, ECF No. 3.

[97] *Moore v. Dretke*, 369 F.3d 844, 846 (5th Cir. 2004) (per curiam) (internal quotation marks and citation omitted). *See also Wiley v. Epps*, 625 F.3d 199, 207 (5th Cir. 2010).

[98] Pet'r's Pet. at 7, ECF No. 3.

[99] *Tellez*, 2015 WL 5449728, at *2.

"[c]laims of actual innocence . . . have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."[100]  The Supreme Court further declared that the "threshold showing for such an assumed right would necessarily be extraordinarily high."[101]  The Supreme Court reaffirmed this basic principle in *McQuiggin v. Perkins*, noting it "ha[s] not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence. . . ."[102]

Construing this claim as an assertion that the evidence was legally insufficient to sustain his convictions, Tellez is not entitled to relief.  The controlling federal law is stated in *Jackson v. Virginia*, 443 U.S. 307, 325–26 (1979).  To be entitled to relief on a sufficiency of the evidence claim, a petitioner must prove that no rational trier of fact could have found the existence of facts necessary to establish guilt beyond a reasonable doubt.  When applying this standard, all evidence is viewed in the light most favorable to the prosecution, and all credibility choices and conflicts in the evidence are resolved in favor of the verdict.[103]

Viewing all of the evidence in the record in the light most favorable to the prosecution, and resolving all credibility issues in favor of the verdict, there was sufficient evidence that a rational trier of fact could have found the existence of facts necessary to establish Tellez's guilt beyond a reasonable doubt.  Accordingly, this claim must be denied.

---

[100] 506 U.S. 390, 400 (1993).

[101] *Id.* at 417.

[102] 133 S. Ct. 1924, 1931 (2013). *See also Reed v. Stephens*, 739 F.3d 753, 766 (5th Cir. 2014) (collecting cases).

[103] *Jackson*, 443 U.S. at 319; *Ramirez v. Dretke*, 398 F.3d 691, 694–95 (5th Cir. 2005).

# CERTIFICATE OF APPEALABILITY

Although Tellez has not yet filed a notice of appeal, the Court must nonetheless address whether he is entitled to a certificate of appealability.[104] A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[105] In cases where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[106] To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the petitioner must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[107]

In this case, reasonable jurists could not debate the dismissal of Tellez's § 2254 petition on procedural grounds, or find that the issues presented are adequate to deserve encouragement to proceed.[108] Furthermore, Tellez has not made a substantial showing of the denial of a constitutional right. Accordingly, the Court shall not issue a certificate of appealability.

---

[104] *See* 28 U.S.C. foll. § 2254 Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

[105] 28 U.S.C. § 2253(c)(2); *Gonzalez v. Thaler*, 132 S. Ct. 641, 646 (2012).

[106] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

[107] *Id.*

[108] *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).

## CONCLUSIONS AND ORDERS

The Court concludes that Tellez was not denied the effective assistance of trial counsel, and there was sufficient evidence to support his convictions. The Court further concludes that Tellez procedurally defaulted his ineffective-assistance-of-appellate-counsel claim, and his remaining claims are not cognizable in a federal habeas action. Accordingly, the Court concludes Tellez is not entitled to § 2241 relief. The Court also concludes that Tellez is not entitled to a certificate of appealability. Therefore, the Court enters the following orders:

**IT IS ORDERED** that Petitioner Hector Tellez's Petition for a Writ of Habeas Corpus (ECF No. 3) is **DENIED** and his cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Petitioner Hector Tellez is **DENIED** a certificate of appealability.

**IT IS ALSO ORDERED** that all pending motions are **DENIED**.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

**SO ORDERED**.

SIGNED this 28th day of February, 2018.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE